# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-cv-02372-MAA <br><br> **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

On December 10, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision partially granting her application for Supplemental Security Income pursuant to Title XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

///

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## ADMINISTRATIVE HISTORY

In 2014, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging disability beginning on May 20, 2013. (Administrative Record [AR] 147, 118-19, 315-27.) Plaintiff alleged disability due to a manic disorder, bipolar disorder, high blood pressure, vertigo, asthma, stomach stapling, arthritis, headaches, sleep apnea, non-cancerous tumors on the thyroid glands, hyperactive thyroid, a disc problem in the lower back, possible breast cancer, insomnia, edema, depression, anxiety, and a hysterectomy due to endometriosis. (AR 96-97, 120.) After the applications were denied initially and on reconsideration, and after an administrative hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a decision filed on May 2, 2017. (AR 147-57.)

On June 28, 2018, the Appeals Council granted review and remanded the matter to the ALJ for further proceedings. (AR 164-68.) A different ALJ held a hearing on December 4, 2018. (AR 70-95.) Plaintiff appeared at the hearing with counsel, and the ALJ heard testimony from Plaintiff and a vocational expert. (*Id.*) In a partially favorable decision filed on January 10, 2019, the ALJ found that Plaintiff was disabled beginning on November 22, 2016 (the date of her fiftieth birthday, when her age category changed), but not earlier. (AR 14-26.)

As to the earlier period of non-disability, the subject of this appeal, the ALJ made the following findings pursuant to the Commissioner's five-step evaluation. Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of May 20, 2013. (AR 17.) She had severe impairments consisting of "degenerative disc disease of the lumbar spine; obesity; asthma; fracture, left ankle; hypertension; subarachnoid hemorrhage; deep vein thrombosis; pulmonary emboli; bipolar disorder; and anxiety[.]" (*Id.*) She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 17-18.)

She had a residual functional capacity for sedentary work with several additional limitations. (AR 18-19.) Plaintiff was unable to perform her past relevant work as a cashier/checker and companion. (AR 23-24.) However, she could perform other jobs existing in significant numbers in the national economy, in the occupations of inspector, assembler, and polisher. (AR 25.) Accordingly, the ALJ concluded that Plaintiff was disabled beginning on November 22, 2016, but not earlier. (AR 26.)

On October 22, 2019, the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUE

The parties raise the following disputed issue regarding the ALJ's finding of non-disability for the period prior to November 22, 2016: whether the ALJ properly resolved the conflict in the vocational evidence presented. (ECF No. 19, Parties' Joint Stipulation ["Joint Stip."] at 5.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is

susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

**A. Legal Standard.**

At step five of the Commissioner's five-step sequential evaluation process, "the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also* 20 C.F.R. §§ 404.1566(b), 416.966(b). An ALJ's determination at step five involves "exploring two issues." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). First, the ALJ must identify the types of jobs that a person could perform despite the claimant's limitations. *See id.* Second, the ALJ must ascertain that such jobs exist in significant numbers in the national economy. *See id.* Here, Plaintiff's challenge goes to the second issue of job numbers.

An ALJ may rely on a VE's testimony regarding the number of relevant jobs in the national economy. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.* "[A]s is clear from the language of *Bayliss*, at least in the absence of contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017).

**B. Background.**

The ALJ and Plaintiff's counsel each questioned the VE about Plaintiff's ability to perform work existing in significant numbers in the national economy.

The ALJ asked the VE a hypothetical question that contemplated an individual limited to a range of sedentary work that included, in pertinent part, further limitations to simple, routine tasks; simple work-related decisions with few changes in the workplace; and occasional contact with supervisors, co-workers, and the public. (AR 87-88.) The VE testified that such a person could perform three occupations: (1) inspector (Dictionary of Occupational Titles [DOT] 726.684-110), which has 25,000 jobs in the national economy; (2) assembler (DOT 726.685-066), which has 30,000 jobs in the national economy; and (3) polisher (DOT 713.684-038), which has 20,000 jobs in the national economy. (AR 88-89.)

Plaintiff's counsel then questioned the VE about his job numbers. (AR 91.) When asked to supply the Standard Occupational Classification ("SOC") code for any of the occupations he had identified, the VE responded that he did not have that information with him. (*Id.*)[2] When asked to explain how he had arrived at his job numbers, the VE responded as follows:

> That's based on the heading in the DOT. As you probably are aware that these jobs are categorized, most of them, by industry. And then there's a listing in the DLS[3] with the same, if not similar industry. You have to scour, for lack of a better term, the DOT, eliminate the jobs that no longer exist, which we know and identify the jobs that continue to exist, based on the headings in the DOT. Like the electronics industry an there's [*sic*] a listing in the BLS with the heading of electronic and you have to just go by the description of the jobs in the field, and, therefore, you get an estimate and you get an idea of the numbers. All these numbers are estimates.

---

[2] An SOC code provides information about job numbers, which the DOT does not. *See Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 446 (2d Cir. 2012) (*per curiam*).

[3] It is likely that the VE did not say "DLS" but rather said "BLS," an abbreviation for the United States Bureau of Labor Statistics.

(AR 91-92.)

When pressed further by Plaintiff's counsel, the VE testified, "I think we should follow the industry, matching with the DOT, in the BLS, as best we can, and arrive at an estimated number." (AR 92.) And when Plaintiff's counsel asked the VE whether he uses tools such as "a crosswalk or a Matrix" to arrive at his job numbers, the VE testified, "I don't go by numbers that way. That would be confusing." (AR 92-93.)[4]

The day after the hearing, Plaintiff's counsel submitted a brief to the ALJ challenging the reliability of the VE's testimony. (AR 506-654.) Plaintiff's counsel argued that the VE overstated the number of available jobs, which would be significantly eroded because of Plaintiff's limited abilities in several areas such as engaging in contact with others, standing, walking, sitting, and lifting. (AR 511-13.) As support, Plaintiff's brief attached several relevant excerpts from job publications such as the DOT, the Occupational Outlook Handbook, County Business Patterns, and O*NET. (AR 515-654.)

In her decision, the ALJ did not address any of Plaintiff's post-hearing evidence but instead accepted the VE's testimony in its entirety to find that Plaintiff could perform the occupations of inspector, assembler, and polisher. (AR 25.) Thus, the ALJ concluded at step five that Plaintiff was not disabled for the relevant period. (*Id.*)

**C. Analysis.**

A court that must review a VE's testimony for substantial evidence may consider circumstances such as, for example, the VE's credentials, the cogency of his testimony and use of a well-accepted methodology, and the existence of conflicting evidence in the rest of the record. *See Biestek*, 139 S. Ct. at 1155.

---

[4] A crosswalk publication assists in the calculation of job numbers by providing an SOC code for a corresponding DOT code. *See Goode v. Commissioner of Social Security*, 966 F.3d 1277, 1281 (11th Cir. 2020).

Based on these considerations, the VE's testimony in this case was sufficient to "clear the substantial-evidence bar." *See id*. at 1156.

In the first place, the VE's credentials, which Plaintiff did not challenge (AR 86-87), were more than adequate. The VE had a graduate degree in vocational rehabilitation, 35 years of experience as a vocational rehabilitation counselor, and experience testifying as a VE for Social Security disability hearings since 1993. (AR 503-04.)

Moreover, the VE's testimony was sufficiently cogent such that a reviewing court could discern how he had arrived at his job numbers, and it was based on a well-accepted methodology. The VE explained with sufficient clarity that he matched the relevant DOT codes to similar industries described by the BLS, after scouring the DOT for jobs that no longer existed and that continued to exist. (AR 91-92.) This is a well-accepted methodology to calculate job numbers. *See Wright v. Berryhill*, 692 F. App'x 496, 496-97 (9th Cir. 2017) ("In determining the number of jobs [the claimant] could perform, the VE consulted reliable sources — the Dictionary of Occupational Titles (DOT), the Bureau of Labor Statistics (BLS), and her own professional experience.") (citing 20 C.F.R. § 404.1566). Thus, the VE's testimony makes this case distinguishable from the non-Ninth Circuit cases Plaintiff cites (Joint Stip. at 19) for the proposition that a VE's testimony does not rise to the level of substantial evidence when it is unintelligible or is based on clearly mistaken citations to job information. The record does not show that the VE's testimony here was unintelligible or relied on mistaken citations to job information.

The final consideration, which is the crux of Plaintiff's argument, goes to the existence of conflicting evidence in the record, specifically, Plaintiff's post-hearing evidence about job numbers. Plaintiff argues that the ALJ's failure to address it was reversible legal error. (Joint Stip. at 6-7, 13, 18-19.) But an ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*,

739 F.2d 1393, 1394-95 (9th Cir. 1984) (*per curiam*) (emphasis in original; citation and internal quotation marks omitted).

Plaintiff's post-hearing evidence did not qualify as significant and probative evidence. It was not striking in the sense that it showed a vast discrepancy with the VE's job numbers based on the *same source* that the VE had used. *Cf. Buck*, 869 F.3d at 1046-47, 1052 (holding that an ALJ was required to address a "vast discrepancy between the VE's job numbers and those tendered by [the claimant], presumably from the same source"). Rather, Plaintiff's post-hearing submission admittedly relied on different sources and a different methodology, which the VE found "confusing" (Joint Stip. at 11; *see also* AR 92-93), to arrive at alternative job numbers. This was not evidence that the ALJ was required to discuss. *See Howard v. Astrue*, 330 F. App'x 128, 131 (9th Cir. 2009) (claimant's evidence about job numbers "did not provide 'significant probative evidence' regarding how many jobs were available in the local and national economies. The ALJ properly relied on the VE's testimony for that information"); *Crane v. Barnhart*, 224 F. App'x 574, 578 (9th Cir. 2007) (claimant's documentation regarding numbers of available jobs was "neither significant nor probative" because it "did not provide information regarding how many jobs were available in the local and national economies, and even if it had, the ALJ already relied on a proper source for that information — the VE's testimony, based on the DOT"); *see also Brault*, 683 F.3d at 448 (holding that an ALJ was not required to provide a specific analysis of a claimant's post-hearing memorandum objecting to a VE's testimony about job numbers).

At most, Plaintiff's post-hearing brief appears to have offered an alternative scenario, based on different sources and methods, of how many jobs were available in the national economy. This was not enough to squarely contradict the VE's testimony such that the ALJ should not have accepted it. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld.") (citation omitted); *see also Webster v. Commissioner of Social Security*, 773 F. App'x 553, 555 (11th Cir. 2019) (*per curiam*) (claimant did not undermine a VE's testimony about job numbers, which was based on the VE's personal knowledge of job industries, with different job numbers reported by the Bureau of Labor Statistics).

In sum, the relevant considerations reveal that the VE's credentials were sufficient and went unchallenged, that he explained his opinion with sufficient cogency and based it on a well-accepted methodology, and that his testimony was not squarely contradicted by Plaintiff's post-hearing evidence of alternative job numbers. Thus, the VE's testimony was sufficient to support the ALJ's conclusion at step five.

Plaintiff's additional arguments do not call for a different result. Plaintiff argues that he was stymied in his attempt to cross-examine the VE because of the VE's inability to provide the SOC codes for the relevant occupations. (Joint Stip. at 10; *see also* AR 91.) But this fact does not mean the VE's testimony failed to clear the substantial-evidence bar. *See Ford v. Saul*, 950 F.3d 1141, 1159-60 (9th Cir. 2020) (rejecting an argument that a VE's inability to produce information upon request meant her testimony was not substantial evidence, noting the absence of any "free-standing procedural rule under which a vocational expert would always have to produce [her underlying data] upon request") (alteration in original, quoting *Biestek*, 139 S. Ct. at 1154).

Plaintiff relatedly argues that the VE did not sufficiently explain his methodology, thus suggesting that the VE's testimony was not "reliable," or was based on "[i]rrational preferences." (Joint Stip. at 11.) Contrary to Plaintiff's suggestions, the VE's testimony was sufficient to support the ALJ's conclusions. The VE, drawing on decades of experience (AR 503-04), testified with sufficient clarity that he had arrived at his job numbers by using widely-accepted government sources of job information, the DOT and the BLS, to estimate job numbers for DOT

occupations that he had verified still existed (AR 91-92). The VE's failure to give a more detailed explanation than that does not mean his testimony failed to clear the substantial-evidence bar. *See Biestek*, 139 S. Ct. at 1157 ("Even though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold."). And, as noted, a VE's "recognized expertise provides the necessary foundation for his or her testimony" so that "no additional foundation is required." *See Bayliss*, 427 F.3d at 1218; *see also Pena v. Commissioner of Social Sec.*, 489 F. App'x 401, 403 (11th Cir. 2012) (ALJ was entitled to rely upon a VE's "experience" and "his personal knowledge of those jobs," "without requiring the VE to provide a comprehensive statistical explanation of how he arrived at the . . . job number figures"). Given the VE's expertise and the content of his testimony, the ALJ was entitled to credit that testimony without questioning it further. *See Bayliss,* 427 F.3d at 1218 n.4 (ALJs, who are not bound by the Federal Rules of Evidence, are not required to perform a gatekeeping function to screen a VE's testimony for relevance and reliability). "Moreover, our inquiry 'defers to the presiding ALJ, who has seen the hearing up close.'" *Ford*, 950 F.3d at 1159 (quoting *Biestek*, 139 S. Ct. at 1157).

Plaintiff finally argues that the DOT, on which the VE relied, is outdated and should be jettisoned in favor of a more reliable source of job information, O*NET. (Joint Stip. at 12-13.) The DOT, however, is the Commissioner's "primary source of reliable job information regarding jobs that exist in the national economy." *See Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (citation and internal quotation marks omitted). In contrast, the Commissioner determined in 2010 "that O*NET in its current form was not suitable for disability claims adjudications." *See O'Neal v. Commissioner of Social Security*, 799 F. App'x 313, 317 and n.1 (6th Cir. 2020). Moreover, although the DOT is listed in the Commissioner's regulations as a publication that is subject to administrative notice for job information, O*NET is not. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d). Thus, the

VE's testimony, and the ALJ's reliance on it, were not undermined by the VE's use of the DOT.

**D.   Conclusion.**

The VE's testimony cleared the substantial-evidence bar and, thus, supported the ALJ's conclusion at step five that Plaintiff could perform a significant number of jobs in the national economy for the relevant period. Moreover, the ALJ did not commit reversible legal error by failing to address Plaintiff's post-hearing evidence about job numbers. In sum, reversal is not warranted.

**ORDER**

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED:  February 3, 2021

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE